# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-05-00063-CV

**Brenda C. Kirby, Appellant**

**v.**

**William Tjarks, Gayle Rankin and June Wendy Johnson, individually,
as Heirs of the Estate of June Bruckmiller, Deceased, and as
Beneficiaries of the Bruckmiller Trust, Appellees**

FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
NO. 11,800, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Brenda Kirby appeals the district court's judgment that she converted appellees' real and personal property. Appellees (the "Children")[1] are the beneficiaries of the Bruckmiller Trust, an inter vivos trust established by their mother, June Bruckmiller, and their step-father, Charles Bruckmiller. Under the terms of the trust, the Children became beneficiaries upon the death of their mother and step-father; June died first in 1993 and Charles died in 1997. After June's death, Charles partially revoked the trust. In order to effectuate the partial revocation, Charles evenly divided the trust's brokerage account, placing one-half in his personal brokerage account and leaving the other

---

[1] Appellees include William Tjarks, Gayle Rankin and Wendy Johnson, individually, as heirs of June Bruckmiller's estate, and as beneficiaries of the Bruckmiller Trust. For clarity, we will refer to appellees collectively as the Children.

half in the trust. He also transferred title to real property held by the trust to himself individually. The Children claim that Charles violated the terms of the trust by removing assets from June's irrevocable interest in the trust.

After June's death, with the advice of his friend and attorney Jerome Kirby, Charles executed a new will, naming Jerome's wife Brenda Kirby executrix of his estate (the "Bruckmiller Estate") and giving her an unlimited power of appointment.[2] After Charles's death, Kirby subsequently transferred all of the Bruckmiller Estate's assets to herself. The Children filed suit in district court seeking a declaration that the Bruckmiller Estate contained assets that lawfully belonged to them as beneficiaries of the Bruckmiller Trust.[3] The Children also claimed that Kirby converted their property by transferring assets of the Bruckmiller Estate to herself. The district court denied the Children's request for declaratory relief but rendered judgment on their conversion claim. The district court awarded the Children monetary damages and a one-half interest in the real property that Charles removed from the Bruckmiller Trust. In addition, the district court awarded the Children attorney's fees.

Kirby appeals the district court's judgment claiming that (1) Texas does not recognize a cause of action for the conversion of real property; (2) there is no evidence to support the district court's judgment that she committed conversion in her individual capacity; (3) the Children were estopped from claiming an interest in the Bruckmiller Trust's brokerage account; (4) the district court's judgment is void because it lacked jurisdiction; (5) the Children are not entitled to attorney's

---

[2] We will refer to appellant Brenda Kirby as "Kirby" and to her husband by his full name.

[3] The Children sued against Kirby, individually; Kirby, as executrix of the Bruckmiller Estate; the Bruckmiller Estate; and Jerome Kirby.

2

fees as a matter of law; and (6) she is entitled to attorney's fees under the declaratory judgments act. We hold that the district court had jurisdiction over the underlying litigation because the Children's suit concerned the interpretation of a trust instrument. We agree that real property cannot be converted as a matter of law. Furthermore, the record does not contain legally and factually sufficient evidence establishing that the Children were entitled to possession of any property individually held by Kirby, a required element for a claim of conversion. Therefore, we reverse and render judgment that Kirby did not commit conversion as a matter of law.[4] Additionally, we reverse the district court's award of attorney's fees.

## BACKGROUND

On September 8, 1968, June and Charles Bruckmiller were married in New York. June had three children—William, Gayle, and Wendy—from a prior marriage; Charles had no children. The Bruckmillers lived in New York until 1986 when they moved to Texas.

In 1992, the Bruckmillers established an inter vivos trust to which they transferred most of their separate and community property. Although the corpus of the Bruckmiller Trust included nearly all of the Bruckmillers' assets, this appeal concerns (1) June's separate property, which consisted of stocks and bonds she had inherited from her mother; and (2) the couple's community interest in their home in Kingsland, Texas, and a vacant lot in Flagler County, Florida (the "Florida lot").[5] Jerome Kirby prepared the trust documents.

---

[4] In light of our reversal of the district court's judgment, we need not reach Kirby's third issue concerning whether the Children were estopped from claiming an interest in the Bruckmiller Trust's brokerage account.

[5] There is no evidence in the record that title to the Florida lot was ever transferred to the Bruckmiller Trust, and all parties agree that the Florida lot was Charles's and June's community

The purpose of the trust was to manage the Bruckmillers' estate during their lifetimes. Charles and June were co-trustees with equal authority and control over all trust property. Additionally, Charles or June could revoke, modify, or amend the trust at any time during their lifetimes. Upon the death of the first spouse, the trust became irrevocable as to the deceased's interest. The surviving spouse could revoke or modify any portion of the trust pertaining to assets that had been owned by that spouse before the trust was created. Any revocation or modification could include "an undivided one half of all increases and changes in assets through trades, sales, exchanges or purchases." A partial revocation could affect only the surviving spouse's separate property and one-half interest in community property held in trust. Upon the death of the second spouse, the Children would share equally all assets remaining in the Bruckmiller Trust.

June died intestate in October 1993. She had not revoked or modified her interest in the trust. In January 1994, Charles directed Jerome Kirby to amend the trust to remove Charles's separate property and his share of community property. In May 1996, Charles partially revoked the trust as to these assets. To effect the change he divided the trust's brokerage account, leaving one half in the trust account and transferring the other half to his personal account. He also transferred full title to the Kingsland house from himself as trustee of the Bruckmiller Trust to himself individually.

---

property and not an asset of the trust.

4

In July 1996, Charles executed his new will with Jerome Kirby's help.[6]  In the will, Charles appointed Jerome Kirby's wife, Brenda Kirby, independent executrix with the "power to appoint or designate those persons or institutions . . . who are, in her sole judgment, justly or equitably entitled to receive or ought to receive all or part" of his estate (the "Bruckmiller Estate"). When Charles died in December 1997, his estate included the following assets: (1) the Kingsland house; (2) the Florida lot; (3) approximately $163,673 held in four separate bank accounts; (4) Charles's personal brokerage account; and (5) various items of personal property.  In May 1999, as executrix of the Bruckmiller Estate with the power of appointment, Kirby transferred all of these assets to herself.  Shortly after Charles's death, the brokerage account remaining in the trust, valued at approximately $185,000, was distributed in equal shares to the Children.

### County court proceedings

After his death in 1997, Kirby filed an application for the probate of Charles's will in the constitutional county court of Llano County.  The county court ordered that the will be admitted to probate, issued letters testamentary, and appointed Kirby independent executrix of the Bruckmiller Estate.  The Children filed a motion seeking to remove Kirby as independent executrix of the estate.  Kirby then filed a motion to transfer the probate proceedings to district court.  The county court granted Kirby's motion and transferred the case to district court for determination of

_____

[6] Jerome Kirby testified that he did not actually draft Charles's will and that he hired a fellow attorney, Wade Hutto, to draft and execute the document.  Although there is a dispute in the record as to the role Jerome Kirby played in this process, there is little doubt that he served as counsel to Charles in initially recommending the trust, in partially revoking the trust, and generally in managing his estate.

all issues relating to the Children's motion. At the time of this appeal, no action had been taken by the district court on these matters. In 2002, Kirby finally filed an inventory, appraisement, and list of claims for the Bruckmiller Estate with the district court.

### District court proceedings

In May 1998, the Children filed a separate suit in district court against the Bruckmiller Estate; Kirby, individually and as executrix of the Bruckmiller Estate; and Jerome Kirby (collectively the "Defendants").[7] The Children insisted that Charles improperly removed from the Bruckmiller Trust June's separate property and her one-half interest in the couple's community property. Specifically, the Children claimed that the Bruckmiller Trust's brokerage account was originally funded with June's separate property. Thus, by ordering that the account be divided in half, Charles removed more than his community interest in "one half of all increases and changes in assets through trades, sales, exchanges or purchases." In addition, the Children argued that the Kingsland house was community property belonging to the Bruckmiller Trust. Thus, Charles could not transfer from the trust more than an undivided one-half interest in the home to himself.

In their fourth amended petition, the Children alleged seven alternative theories of recovery. In Count 1, they requested that the district court construe the trust documents and declare that (1) they are the rightful owners of the property and assets of the Bruckmiller Trust as of Charles's death; (2) Charles exceeded his authority by revoking more than his interest in the trust after June's death; (3) Charles improperly removed June's separate property from the trust after her

---

[7] The Children's suit was originally filed in Fort Bend County but was subsequently transferred to the Llano County district court.

death; (4) the inventory of the Bruckmiller Estate wrongfully lists property belonging to the Bruckmiller Trust; and (5) they collectively own, as beneficiaries of the trust, June's one-half community property interest in the Kingsland house and the Florida lot. In Count 2, the Children asserted that the Defendants were jointly and severally liable for conversion and trespass to chattel. In Counts 3, 5, 6, and 7, the Children averred that the Defendants were liable for tortious interference, money had and received, civil conspiracy, and failure to make a complete accounting of the property and accounts belonging to the Bruckmiller Trust. In Count 4, the Children claimed that Charles violated the trust code and that, consequently, the Bruckmiller Estate is liable for his actions.

At trial, the Children presented expert testimony and evidence indicating that Charles removed June's separate property from the Bruckmiller Trust when he transferred one half of the Bruckmiller Trust's brokerage account to his personal account. By elaborately tracing the ownership history of certain stocks and bonds held by the Bruckmiller Estate, the Children claimed that it was possible to determine what June's interest in the Bruckmiller Trust's brokerage account would have been worth at the time Charles died if he had not removed her separate property. The value of the brokerage account upon Charles's death is important because that is when the Children became beneficiaries of the trust.

Ultimately, the district court rendered judgment in favor of the Children "on their claim of conversion against Defendant Brenda C. Kirby, in her individual capacity only, as the convertor." The district court awarded the Children $139,000 in damages plus interest. The district court reached this figure by subtracting the $185,000 previously distributed to the Children from the

amount that the Children's expert witness claimed June's irrevocable interest in the trust's brokerage account would have been worth at the time Charles died, approximately $324,000. The district court additionally awarded the Children a one-half interest in the Kingsland house and the Florida lot, and attorney's fees. The district court denied all relief not granted in its judgment and ordered that the Children take nothing from the Bruckmiller Estate, from Kirby in her role as executrix of the Bruckmiller Estate, or from Jerome Kirby, individually.

This appeal followed.

## DISCUSSION

**Jurisdiction**

In her fourth issue, Kirby claims that the district court's judgment is void because the constitutional county court in Llano County had dominant jurisdiction to determine the Children's claims pertaining to property held by the Bruckmiller Estate. Kirby insists that because the probate proceedings were initiated prior to the filing of the Children's suit, the constitutional county court had dominant jurisdiction over all matters appertaining to or incident to the administration of the Bruckmiller Estate. We disagree.

As a general rule, the court in which a suit is first filed acquires dominant jurisdiction to the exclusion of other courts. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988); *Schuele v. Schuele*, 119 S.W.3d 822, 824 (Tex. App.—San Antonio 2003, no pet.). Dominant jurisdiction, however, is a concept that applies when separate suits are filed in courts with concurrent jurisdiction. *Schuele*, 119 S.W.3d at 824. Therefore, we must first determine whether the Llano County Court had any authority to hear the Children's suit.

8

District courts and statutory probate courts are the only courts with jurisdiction over trust proceedings. *See* Tex. Prop. Code Ann. § 115.001 (West Supp. 2005);[8] *Schuele*, 119 S.W.3d at 825. Because the Children's case involves the construction of the Bruckmiller Trust, the Llano County Court lacked jurisdiction to consider the Children's claims. Thus, despite the fact that the district court's judgment affects the administration of the Bruckmiller Estate, the Llano County Court did not acquire dominant jurisdiction over the Children's suit. Kirby's fourth issue is overruled.

**Conversion of real property**

In her first issue, Kirby argues that the district court erred by awarding the Children a one-half interest in the Kingsland house and the Florida lot because Texas law does not recognize a cause of action for the conversion of realty. Conversion is defined as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997); *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex. 1992). Real property cannot be converted. *See Williams v. City of Dallas*, 53 S.W.3d 780, 787 (Tex. App.—Dallas 2001, no pet.) (defining conversion as unauthorized and unlawful assumption and exercise of dominion and control over *personal property* of another); *Lighthouse Church v. Texas Bank*, 889 S.W.2d 595, 599 n.4 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex. App.—Austin 1992, no writ) (noting that real property cannot be converted).

---

[8] Since the filing of the Children's suit, the legislature has amended property code section 115.001. *See* Act of May 24, 2005, 79th Leg., R.S., ch. 148, § 22, 2005 Tex. Gen. Laws 294. Because the changes do not affect our analysis, we refer to the current version of the statute.

In response, the Children insist that the district court awarded them a one-half interest in the real property pursuant to their claim for declaratory relief.[9] We recognize that, in order to conclude that Kirby was liable for conversion, the district court necessarily construed the terms of the Bruckmiller Trust and determined the Children's rights to certain properties. We also understand that facts implied in support of the Children's conversion claim could also support the requested declaratory relief. However, the district court's judgment states, "The court hereby RENDERS judgment for Plaintiffs [the Children] on their claim of conversion against Defendant Brenda C. Kirby, in her individual capacity only, as the convertor." The judgment is silent as to the Children's declaratory claim, except that it contains a Mother Hubbard clause denying all relief not specifically granted. The Children did not appeal the denial of their claim for declaratory relief, nor did they request that the judgment be modified to support the award of the real property on grounds other than conversion. Therefore, we will not imply relief on grounds overruled by the trial court.

We sustain Kirby's first issue, that real property cannot be converted. Accordingly, we strike the district court's award to the Children of a one-half interest in the Kingsland house and the Florida lot because the awards do not comply as a matter of law with the district court's judgment that the Children prevailed on their conversion claim.

---

[9] In their declaratory claim, the Children asked the district court to construe the terms of the Bruckmiller Trust and to declare their rights to property formerly held by the Bruckmiller Trust. In particular, they argued that the Kingsland house and the Florida lot were Charles's and June's community property and that June's one-half interest in community property held by the Bruckmiller Trust became irrevocable upon her death. Here, the Children aver that the district court's award of the real property interests demonstrates that it determined (1) the properties were community interests held by the Bruckmiller Trust, (2) that Charles lacked the authority to transfer title to the properties, and (3) that they were entitled to June's irrevocable interests as beneficiaries of the Bruckmiller Trust upon Charles's death.

**Sufficiency of the evidence**

In her second issue, Kirby asserts that there is no evidence to support the district court's judgment for the Children on their conversion claim against her in her individual capacity. Specifically, she claims that there is no evidence in the record that could support a finding that she individually converted any remaining interest the Children may have had in stocks and bonds formerly held by the Bruckmiller Trust. To establish a claim for conversion of personal property, the Children must have proven that: (1) they owned or had legal possession of the property or entitlement to possession; (2) Kirby unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, their rights as owners; (3) they demanded return of the property; and (4) Kirby refused to return the property. *See Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.). Kirby claims that the record does not contain sufficient evidence to establish any of these elements.

Kirby timely requested findings of fact and conclusions of law pursuant to Texas Rules of Civil Procedure 296 and 297; however, the district court did not file any findings or conclusions. Tex. R. Civ. P. 296 & 297. When a bench trial is conducted and the court does not enter findings of fact and conclusions of law to support its ruling, all facts necessary to support the judgment are implied. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Because the district court granted judgment for the Children on their conversion claim but did not enter specific findings of fact or conclusions of law, we review Kirby's complaints under the presumption that all findings and conclusions were made in favor of the judgment.

11

Implied findings are not conclusive and may be challenged on the basis of legal and factual insufficiency when the appellate record includes the reporter's and clerk's records. *BMC Software Belg.*, 83 S.W.3d at 795. We review the trial court's implied findings by the same standards applied in reviewing the legal and factual sufficiency of evidence supporting a jury's finding. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In a challenge to legal sufficiency, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id*. at 827. The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review. *Id*.

In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may not substitute our own judgment for that of the trier of fact, even if we would have reached a different result on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). Therefore, we will reverse only if the overwhelming weight of the evidence indicates the district court's judgment was clearly wrong and unjust.

Kirby argues that the record does not contain legally and factually sufficient evidence to support the district court's implied finding that the Children were entitled to any property held by her individually, which is the first element of a conversion claim. *See Maximum Racing*, 136 S.W.3d

12

at 341. The Children maintain that Charles's partial revocation of the Bruckmiller Trust resulted in the improper and unlawful removal of a portion of June's irrevocable interest in the Bruckmiller Trust's brokerage account. The Children argue that evidence in the record conclusively establishes that the improperly removed portion of the trust's brokerage account contained stocks and bonds that were included in the Bruckmiller Estate and were subsequently transferred by Kirby to herself. The Children argue that evidence in the record conclusively establishes that the improperly removed portion of the brokerage account became an asset of the Bruckmiller Estate and that Kirby, as executrix of the estate, transferred that asset to herself individually as beneficiary. From this, the Children insist that Kirby has unlawfully exercised dominion and control over stocks and bonds to which they are legally entitled as beneficiaries of the Bruckmiller Trust.

The record contains evidence successfully tracing certain stocks and bonds to June's inheritance; she then contributed this separate property to the Bruckmiller Trust. After June's death, Charles wrongfully assumed that the trust was community property and transferred half of the brokerage fund to his individual account. However, the trust specifically provides, "No action shall lie at law or in equity in favor of beneficiaries who may receive future benefits [the Children] against beneficiaries or their estates, who are currently receiving benefits or have received benefits in the past [Charles or June Bruckmiller], absent intentional fraud." The trust also states, "No remainder interest [the Children] shall have a cause of action against the Trustees [Charles or June] or life estate beneficiaries for waste."

Alvin Golden, co-counsel for appellant, argued that the primary goal of the Bruckmiller trust as written was to support Charles and June during their lives, not to preserve the

assets for the Children. The two exculpatory provisions, insulating Charles and June as trustees from any suit by the Children, are strong evidence of this goal of the trust. The legislature has expressly authorized the use of such exculpatory clauses, stating that they can relieve an individual trustee from liability for all actions except a breach of trust committed in bad faith, intentionally or with reckless indifference to the interest of the beneficiary, or for any profit derived by the trustee from a breach of trust. *See* Act of May 27, 1983, 68th Leg., R.S., ch. 567, art. 2, § 2, 1983 Tex. Gen. Laws 3332, 3358 *repealed by* Act of May 12, 2005, 79th Leg., R.S., ch. 148, § 29, 2005 Tex. Gen. Laws 287, 296; *see also Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 249-50 (Tex. 2002). Currently, the trust code provides that the terms of a trust prevail over any provision found in the code, except in limited circumstances not present in this case. Tex. Prop. Code Ann. § 111.0035(b) (West Supp. 2005).

Neither Charles nor his estate is subject to the legal claims of the Children absent fraud on his part. The Children made it clear at trial that they were no longer pursuing claims of fraud or breach of fiduciary duty against any of the defendants. If the Children can establish that they are legally entitled to any portion of the trust account that wrongfully became part of Charles's estate, they can pursue their claim to those assets that flow to the beneficiary of the estate. However, the Children are barred by the exculpatory provision in the trust from bringing any legal action against Charles or his estate to establish their entitlement to trust assets wrongly removed; thus they have no claim to any of the estate's assets in the hands of the beneficiary, Kirby.

By assessing liability only against Kirby in her individual capacity, the district court seems to have acknowledged the bar against suing Kirby as executor of the estate. But unless the

14

Children can establish their legal rights to the assets held by the estate, they have no claim to those assets in the hands of the beneficiary. Because of the exculpatory provision in the Bruckmiller Trust, the Children could not sue Charles or his estate to establish their right to possession of the stocks and bonds wrongfully removed from the trust by Charles.

The Children suggest that the Kirbys may have exercised undue influence over Charles's decisions to amend the trust and rewrite his will. But there is also evidence of Charles's natural feelings of ill will toward the Children. There were allegations that one of the Children made an obscene gesture toward his mother's casket in Charles's presence and that another threw the elderly Charles up against the wall during a physical altercation. Only one of the Children, Wendy Johnson, visited Charles after June's death; there is no indication in the record that the other Children had any contact with Charles. Moreover, Charles specifically banned the Children from attending his funeral service. In the years following June's death, it appears that the Kirbys became Charles's only friends and family. Thus, Charles could have reasonably intended to make the Kirbys, rather than the Children, the beneficiaries of his estate.

In the end, the Children can only claim an interest in the wrongfully removed portion of the brokerage account as future beneficiaries of the Bruckmiller Trust; but that very trust prevents a future beneficiary from bringing any legal action against the Bruckmiller Estate to establish their alleged right of possession to the stocks and bonds. If they have no claim against the estate, they have no claim against the assets of the estate in the hands of its beneficiary, Kirby. The Children were legally prohibited from establishing their entitlement to certain stocks and bonds held by Kirby.

We sustain Kirby's second issue and reverse the district court's judgment that Kirby converted personal property belonging to the Children.

## CONCLUSION

We reverse the district court's judgment and render judgment that Kirby did not commit conversion as a matter of law. We also reverse the district court's award of attorney's fees.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Pemberton

Reversed and Rendered

Filed: March 23, 2006

16